IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN JOSEPH HEWETT          *
                            *
v.                          *
                            *      Civil Action No. WMN-09-2017
TRI-STATE RADIOLOGY, P.C.   *
et al.                      *
                            *
     *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is Plaintiff's motion to remand this

action to state court.  Paper No. 13.  The motion is ripe.  Upon

review of the pleadings and the applicable case law, the Court

determines that no hearing is necessary, Local Rule 105.6, and

that the motion must be granted.[1]

Plaintiff was employed as a radiologist, first with

Defendant Tri-State Radiology, P.C. (Tri-State) from July 2002,

through March 2004, and then with Defendant Allegany Imaging,

P.C., (Allegany) from March 2004, until his employment was

terminated in January 2007.  Plaintiff became a partner in Tri-

State in July 2003, upon execution of an employment agreement.

Plaintiff became a partner in Allegany in March 2004,by

execution of an employment agreement that was identical to the

Tri-State employment agreement in all provisions relevant to

_____

[1] Also pending is a motion to stay this action pending the
resolution of the motion to remand.  Paper No. 11.  This motion
will be denied as moot.

Plaintiff's claims.  Defendants James Benjamin, George Dwyer, and Charles Magal were partners in Tri-State and Allegany at all times relevant.

Plaintiff filed this action on or about March 14, 2008, in the Circuit Court for Allegany County.  In the Complaint, which was amended on April 1, 2008, Plaintiff alleged that Defendants failed to compensate him as required under Section 4.2 of the employment agreements for approximately 900 overtime days he had worked from July 2003, to April 2007.  Section 4.2 provided the formula under which Plaintiff was to be compensated for hours worked beyond his regularly scheduled hours.

Plaintiff also alleged that Defendants refused to pay him certain salary continuation benefits that they were required to pay under Section 8.1 of the Allegany employment agreement. Section 8 of that agreement provided that, if the physician's employment was terminated for any reason, he would receive additional compensation in the form of equal installments over the next twenty-four months in the amount calculated under a formula set forth in Section 8.1.  In general terms, the formula took the accounts receivable at the time the physician ceased providing services to Allegany and subtracted certain items like bad debts and amounts owed to other physicians receiving continuation benefits.

The First Amended Complaint asserted claims under Maryland's Wage Payment and Collection Act, Md. Code Ann., Lab & Empl. § 3-501, and also brought state common law claims for breach of contract, promissory estoppel, negligent misrepresentation, fraudulent inducement, and unjust enrichment. The suit remained pending in the state court for over a year and extensive discovery was taken.

On July 17, 2009, Plaintiff filed a Second Amended Complaint, adding a claim for an additional $80,871.00 that he asserts was due and owing from Defendant Allegany.  This claim includes amounts due as a first quarter 2007 bonus, amounts wrongfully omitted from his last paycheck, amounts owed for on-call coverage earnings, and additional amounts for continuation benefits.  Second Am. Compl. ¶¶ 53, 56.  Plaintiff alleges that Defendants wrongfully withheld the $80,871.00 "on the pretext that he was required to make up for a pension shortfall."  Id. ¶ 57; see also id. ¶ 90.

Attempting to take advantage of the fact that the Second Amended Complaint made mention of a pension plan, Defendants removed the action to this Court on the theory that Plaintiff's new allegations arise under Section 502(a) of the Employee Retirement Income Security Act("ERISA"), 29 U.S.C. § 1132(a). Countering that his claims all arise under state law, and not under ERISA, Plaintiff moves to remand the case back to the

3

state court.  For the reasons that follow, the Court agrees that this case must be remanded.

The Court notes initially that the "burden of demonstrating jurisdiction resides with the party seeking removal." Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370 (4th Cir. 2003).  The Fourth Circuit has cautioned that the removal of proceedings from state court to federal court raises "significant federalism concerns," Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) and has held that removal jurisdiction should be "narrowly" interpreted in light of these concerns. Sonoco Products, 338 F.3d at 370.

A defendant can remove an action from state court to federal court only if the federal district court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a).  The parties here are all citizens of Maryland and thus lack diversity.  Therefore, removal jurisdiction exists, if at all, by virtue of federal question jurisdiction.  Federal question jurisdiction exists where the plaintiff's claim arises under the Constitution or other federal law. 28 U.S.C. § 1331.  Pursuant to the general well-pleaded complaint rule, federal question jurisdiction must be apparent from the face of the complaint. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983).

4

The Supreme Court, however, has fashioned an exception to the well-pleaded complaint rule which provides that "causes of action within the scope of the civil enforcement provisions of § 502(a) [of ERISA are] removable to federal court" although they "purport[] to raise only state law claims." Metropolitan Life, 481 U.S. at 66-67. See also Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004) (holding that "[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted" and removable) Defendants relied on this exception in removing this action to this Court. The question then before this Court is whether Plaintiff's claim added in the Second Amended Complaint falls within the scope of § 502(a).

Section 502(a) of ERISA provides, in relevant part:

A civil action may be brought-

(1) by a participant or beneficiary

...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132. The Fourth Circuit has identified three essential requirements for complete preemption of a state claim by these provisions;

(1) the plaintiff must have standing under § 502(a) to
pursue [his] claim;

(2)[his] claim must fall[ ] within the scope of an
ERISA provision that [he] can enforce via § 502(a);
and

(3) the claim must not be capable of resolution
without an interpretation of the contract governed by
federal law, i.e., an ERISA-governed employee benefit
plan.

Sonoco Products, 338 F.3d at 372 (internal quotations omitted).

Plaintiff contends, and the Court agrees, that his claims do not

meet the second and third requirements.

Upon Plaintiff's termination, it was determined that he was

entitled to approximately $239,000 as a lump sum benefit under

Defendants' defined benefit plan.  Plaintiff makes it clear

that, in bringing this action, he "does not dispute that

Defendants paid him the entire benefit he is entitled to under

the pension plan."  Mot. at 3.  Defendants do not contest that

this was the proper calculation of Plaintiff's benefit.  See

Dep. of Charles Blazek (Defendants' corporate designee) at 88

(testifying that he told Defendants "that the pension plan was

required to pay Dr. Hewitt $239,000 as the defined benefit he

was entitled to under the plan upon his termination").  Thus,

Plaintiff's entitlement to benefits under the benefit plan is

simply not an issue raised in this action.

What Plaintiff does challenge is Defendants' withholding of

monies due under the employment agreements in order to fund the

pension plan. Defendants acknowledge, through the testimony of their corporate designee, that the funding scheme under which the $80,871.00 was withheld was not a part of the plan documents. Blazek Dep. at 148-49 (agreeing that there is "nothing in the plan document" regarding the funding of the plan); 116 (testifying that he did not refer Defendants to the benefit plan when advising them to withhold the funds). Instead, the withholding of those funds was pursuant to an "understanding" among the partners in the practice, probably unwritten, as to how the plan should be funded. Id. at 89. In fact, Blazek testified that the agreement as to funding could not be in the benefit plan document or it would disqualify the plan as a defined benefit plan. Id. at 117-18.

In challenging the withholding of compensation allegedly due under the employment agreements in order to fund a benefit plan, Plaintiff is not seeking "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (emphasis added). Therefore, this dispute could not give rise to a claim under § 502(a). Nor, is there any need to interpret any plan document to resolve Plaintiff's claim. Although Defendants repeat the mantra that Plaintiff's claims "requir[e] application and interpretation of ERISA" and the "[i]nterpretation [o]f [a]n

ERISA-[g]overned [b]enefits [p]lan," Opp'n at 3, 4, Defendants

point to no particular provision of either ERISA or the benefit

plan documents that need this application or interpretation.[2]

The decision upon which Defendants heavily rely in

justifying their removal of this action, Miller v. U.S.

Foodservices, Inc., 323 F. Supp. 2d 665, 668 (D. Md. 2004),[3] is

readily distinguishable.  In Miller, the plaintiff's employer

allegedly made certain promises to the plaintiff to induce him

to resign his position, including promises that he would receive

certain benefits from his retirement plan and that his benefits

under the plan would be vested through a certain date.  Id. at

667.  This Court, relying on numerous cases holding that "claims

based on such alleged oral promises regarding plan benefits are

subject to ERISA preemption," concluded that "Mr. Miller's

claims would be preempted because they seek increased benefits

---

[2] Defendants also mention in the summary of their argument that
Plaintiff's claim for separation pay benefits in the Second
Amended Complaint constitutes a claim for severance, which they
contend is a welfare benefit plan subject to ERISA's control.
Opp'n at 2.  Defendants, however, never return to that argument.
Plaintiff notes that this Court has held that severance payments
of this sort do not implicate ERISA.  Pl.'s Reply at 4 (citing
Child-Olmsted v. Loyola College, 2005 WL 1000085 (D. Md. 2005)).
Regardless, Plaintiff also notes that his claim that Defendants
unlawfully withheld salary continuation payments was included in
the Amended Complaint filed on April 1, 2008.  Therefore, if the
salary continuation provision was an ERISA-governed benefit
plan, the potential for federal jurisdiction was apparent long
ago and Defendants' notice of removal was untimely filed.

[3] Defendants erroneous refer to this case as a decision of the
Fourth Circuit.  Opp'n at 4.

<u>under the retirement plan</u>, even if the basis for the claims is a promise that also affected Mr. Miller's expected term of employment."  <u>Id.</u> at 667, 668 (emphasis added).  All of the decisions cited in support of its holding address the preemption of claims related to promises of <u>benefits under an employee</u> <u>benefit plan.</u>  <u>See</u>, <u>e.g.</u>, <u>Chapman v. Health Works Med Group of</u> <u>W. Va., Inc.</u>, 170 F. Supp. 2d 635, 640 (N.D. W. Va. 2001) (holding that state-law claims <u>seeking disability benefits</u> based on an alleged oral promise that the plaintiff's prior benefits coverage would continue following a reorganization were preempted); <u>Smith v. Dunham-Bush, Inc.</u>, 959 F.2d 6 (2d Cir. 1992) (holding that claims based on employer's promise that plaintiff would receive a comparable retirement package if he accepted a transfer were completely preempted because plaintiff sought to "<u>clarify future benefits</u>") (emphasis added).  Here, Plaintiff is making no claim for benefits under Defendants' benefit plan.

Of greater significance, perhaps, is this Court's reference in <u>Miller</u> to the need to apply principles from ERISA and interpret plan documents in order to resolve the plaintiff's claims.  Citing a decision holding that ERISA does not recognize the validity of oral or non-conforming written modification to ERISA plans, this Court opined that "adjudicating [the plaintiff's claims] will not be possible without determining, at

a minimum, whether a letter or oral promise may create an entitlement under the plan." Id. at 668 (citing HealthSouth Rehabilitation Hosp. v. Am. Nat'l Red Cross, 101 F.3d 1005, 1010 (4th Cir. 1996)).  Distinguishing the cases relied upon by Mr. Miller in urging remand, this Court emphasized that his "overall claim to retirement plan benefits requires an examination of the terms of the plan and any modification made by the defendants' promises." Id. at 669.  Here, as noted above, Defendants have pointed to neither precepts of ERISA nor provisions of the benefit plan that would need application or interpretation.

Although not directly on point, a decision of one of our sister courts, Venezuela v. Massimo Zanetti Beverage USA, Inc., 525 F. Supp. 2d 781 (E.D. Va. 2007), is instructive.  In Venezuela, the plaintiff entered into an Employment Agreement that provided that, in the event of termination without cause, he would be entitled to two years' salary, bonus, and benefits. After his termination, he filed suit in state court alleging breach of that Employment Agreement.  His former employer removed the action to federal court, asserting, inter alia, that the plaintiff's claims were preempted under ERISA.

In granting the plaintiff's motion to remand, the court concluded that, while some of the benefits which the plaintiff sought to recover under the Employment Agreement "mention" an employee benefit plan, that fact does not automatically mean the

10

Employment Agreement or the plaintiff's claims "relate to" an employee benefit plan as that term is used in the context of ERISA.  525 F. Supp. 2d at 788.  See also Ervast v. Flexible Products Co., 346 F.3d 1007, 1014 (11th Cir. 2003) ("the presence of an ERISA plan within the facts of a case does not, on its own, automatically subject the litigant to federal question jurisdiction").  Furthermore, the court opined that, the determination of the plaintiff's eligibility for the benefit sought required the interpretation of the "Employment Agreement, not the plan documents themselves." Id. at 789.  "Plaintiff's relief does not depend on the resolution of any question involving an interpretation of ERISA; it simply depends on a determination of whether the Employment Agreement has been breached." Id.  Likewise, here.

     Because Defendants have not met their burden of establishing a ground for this Court's jurisdiction over Plaintiff's claim, this action will be remanded to the Circuit Court for Allegany County.  A separate order will issue.


                         _____/s/_____
                         William M. Nickerson
                         Senior United States District Judge


DATED: September 17, 2009

                              11